[Civ. No. 50766. Second Dist., Div. Four. Sept. 1, 1977.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
CHRISTOPHER GILL KENNER, Real Party in Interest.

[Civ. No. 50988. Second Dist., Div. Four. Sept. 1, 1977.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
MARVIN DWIGHT BROOKS, Real Party in Interest.

**COUNSEL**

John K. Van de Kamp, District Attorney, Donald J. Kaplan, Harry B. Sondheim and Roderick W. Leonard, Deputy District Attorneys, for Petitioners.

No appearance for Respondent.

Wilbur F. Littlefield, Public Defender, Harold E. Shabo, Clark E. Shacklett, Bernard J. Rosen and Dennis A. Fischer, Deputy Public Defenders, for Real Parties in Interest.

**OPINION**

**KINGSLEY, Acting P. J.**—We have consolidated these two cases for hearing and decision because they contain a common question of law, although one of them (Kenner) also involves an additional issue.

In both cases, the real parties stand charged with felony offenses in respondent court—Kenner with joyriding in violation of section 10851 of the Vehicle Code, Brooks with burglary in violation of section 459 of the Penal Code. In both cases the police had reasonable cause to arrest the real parties. In both cases, the police went to the home of the real party intending to arrest him based on the information theretofore obtained. In neither case did the police have, or attempt to secure, a warrant either of arrest or for search. In neither case is it claimed that there existed any emergency making the securing of a warrant impracticable.

In Brooks, the police received a consent to enter, expressly stating that their purpose was to arrest Brooks. The validity of that consent is not here questioned. They found Brooks seated in the front room. Brooks made an unsolicited statement incriminating himself. The respondent court, relying on *People v. Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr.

629, 545 P.2d 1333], granted a motion to suppress the statement and physical evidence secured as a result of that statement. The present petition (under subd. (o) of § 1538.5 of the Pen. Code) followed. We issued our alternative writ and the case has been argued. In the Brooks case we grant the petition and order the peremptory writ.

In Kenner, the police, arriving at Kenner's home, were met by his brother (whose age does not appear from the record) and asked to enter "to talk to" Kenner. According to the police evidence, accepted by the trial court, the brother gave consent to the entry and called his mother who, in turn, called Kenner. Without any conversation, the police arrested Kenner. As in Brooks, a motion to suppress statements made after arrest was granted and this petition followed. We issued our alternative writ. In the Kenner case we deny the petition and deny a peremptory writ.

## I

In both cases, the respondent court granted the suppression motions solely on the ground that the arrest was void under *Ramey*. We conclude that that reading of *Ramey* is erroneous. In *Ramey,* and in the cases on which it relies, there was no issue of a consensual entry. *Ramey,* and the other cases, were concerned only with entries to effect an arrest, accomplished solely by the exercise of police authority. The decisions must be read in the light of the problems facing those courts. In all of them, the courts express the need to insure the sanctity of the home—the man's "castle" concept. But that concern, which underlies all police entry cases, whether the entry be to arrest or to search, has not in the search cases gone so far as to void consensual entries. (See the cases cited in Witkin, Cal. Evidence, § 77, pp. 73-74.) The effect of a valid consent was recognized by the Supreme Court, itself, in the *Ramey* opinion where, summarizing its holding, the court said (at p. 275) "But in the absence of a bona fide emergency, *or consent to enter,* police action in seizing the individual in the home must be preceded by judicial authorization of an arrest warrant." (Italics added.)

It is true that, if consent to enter is an exception to, or a situation distinguishable from, *Ramey,* the courts will be faced with a substantial number of difficult factual determinations. But that is equally true of all cases in which an alleged consent is relied on to validate police action. ■ The Fourth Amendment, and the California Constitution, prohibit only *unreasonable* searches and seizures. If, in striking a balance

between effective law enforcement and the sanctity of the home, consensual entries are to be prohibited, there exists a policy decision beyond the proper scope of authority in an intermediate appellate court.

It follows that the People's petition in Brooks should be granted and a peremptory writ issued to direct the denial of Brook's motion to suppress evidence.

## II

Kenner, however, presents an additional problem. ■ Although the respondent court found that there was a consensual entry, it did not, and on the record before it could not, find that that consent validated the arrest which followed.

In *People* v. *Superior Court (Arketa)* (1970) 10 Cal.App.3d 122, 127 [89 Cal.Rptr. 316], the court held that a consent to enter was not a consent to search; the officer's rights being limited to the scope of the consent given. Before an apparent consent can be said to be given voluntarily and knowingly, an alleged consentor must be aware of the purpose of the requested entry and a consent obtained by trickery or subterfuge renders a subsequent search and seizure invalid. Section 844 of the Penal Code requires a police officer not only to demand admittance but to have "explained the purpose for which admittance is desired."

In Kenner, the request was to "talk to" Kenner. In fact, as the record makes clear, the officers had no intention of talking to Kenner at all. When he appeared he was immediately arrested, without any prior interrogation. A person may willingly consent to admit police officers for the purpose of discussion, with the opportunity, thus suggested, of explaining away any suspicions, but not be willing to permit a warrantless and nonemergent entry that affords him no right of explanation or justification.

It follows that, in Kenner, although the trial court was wrong in believing that *Ramey* dictated a grant of the motion to suppress, the trial court reached the correct result because the purported "consent" did not authorize the arrest that immediately followed the entry.

In Civil No. 50988, the petition is granted. Let a peremptory writ issue, directing the respondent court, in its case No. A-611,801, to vacate that portion of its order of March 24, 1977, which granted the motion of

defendant Brooks to suppress evidence and to enter a new and different order denying such motion.

In Civil No. 50766, the alternative writ is discharged; the petition for a writ of mandate is denied.

Dunn, J., concurred.

**JEFFERSON (Bernard), J.**—I concur in part and dissent in part.

I agree with the result reached by the majority in the Kenner case in holding that the motion to suppress was properly granted by the trial judge because the warrantless arrest in the Kenner home was an invalid arrest. However, I disagree with the majority's holding in the Brooks case that the trial judge's order of suppression of evidence was invalid because the warrantless arrest of Brooks in the Kennedy home was valid, based upon a consent to enter and effectuate the arrest.

In both of these cases the issue presented is that of the validity of a warrantless arrest made in a home. In both cases the police officers had reasonable or probable cause to make a felony arrest. It is also conceded that the circumstances were such that there was ample time and opportunity for the officers to apply for, and obtain, a warrant of arrest. In neither case is it claimed that there was any emergency or exigent circumstances to preclude the officers from applying to a judge for a search warrant before proceeding to the respective homes to effect an arrest of Brooks and Kenner.

The majority reaches its result in the Brooks case by holding that there was a valid consent for the police to enter the home where Brooks was located for the purpose of effecting his arrest, and that, under such circumstances, the police are not required to obtain an arrest warrant even though there is no showing that there was any justification for the failure of the police to obtain an arrest warrant.

The majority states that the validity of the consent to enter the home and arrest Brooks is not questioned in this matter before us. I do not interpret the record in this fashion. In the return to the alternative writ, real party in interest Brooks makes it quite clear that he makes a two-fold attack upon the validity of his arrest. He argues first, that his arrest and the resulting search and seizure of evidence are invalid because of the principle that a warrantless arrest of a suspect in his home, even though

based upon probable cause, is invalid in the absence of exigent circumstances. It is the contention of Brooks that, in the absence of exigent circumstances, a consent to search cannot confer validity upon a probable-cause-warrantless-arrest in the home.

But Brooks also advances the contention that the consent to enter and arrest Brooks, given by the occupant of the premises, Carolyn Kennedy, was a consent given in submission to the police officer's assertion of authority to enter the premises to arrest Brooks and, hence, was involuntary and created an invalid arrest and search even if the rule of law is to the effect that a voluntary consent to enter validates a probable-cause-warrantless-arrest made in the home.

It is clear that the trial court granted the evidence-suppression motions, made by Brooks and Kenner, on the ground that the warrantless arrest in the home of each respective defendant was void under the California Supreme Court case of *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333]. In *Ramey,* the police, having reasonable cause to arrest defendant, barged into his home after he opened the door in response to the officers' knock, placed the defendant under arrest, and searched the premises. The *Ramey* court held that even though based upon probable cause, a warrantless arrest within the home is unreasonable per se unless there are exigent circumstances present to justify dispensing with the warrant requirement.

The majority reads *Ramey* as holding that a warrantless arrest of a suspect in the home is a violation of the suspect's constitutional rights under the Fourth Amendment to the United States Constitution and under article I, section 13, of the California Constitution, unless there is either (1) exigent circumstances to justify the warrantless arrest or (2) a consent to enter to justify the warrantless arrest.

For this teaching of *Ramey,* the majority relies upon a single sentence in the opinion. The sentence plucked from the opinion reads: "But in the absence of a bona fide emergency, *or consent to enter,* police action in seizing the individual in the home must be preceded by the judicial authorization of an arrest warrant." (*Ramey, supra,* 16 Cal.3d 263, 275.) (Italics added.)

I don't think that *Ramey* stands for the proposition that there are *two* exceptions to the general rule that a warrantless arrest within the home, even though based upon probable cause, is unreasonable per se. I read

*Ramey* as standing for the proposition that there is only *one* exception to the legal principle of invalidity of a warrantless arrest in a home; that this one exception is that of an emergency or exigent circumstances—which need not be described for purposes of the instant cases.

It is clear to me that the "consent to enter" exception was not intended by *Ramey* to constitute a holding which would be binding in future cases. This one reference in *Ramey* to "consent to enter" is clearly a dictum statement. For this reason, it is obviously not binding upon us. Neither should it be considered as persuasive authority in view of its casual placement in the *Ramey* opinion, and in view of the fact that there was no discussion in the opinion with respect to the rationale for creating a "consent to enter" exception, in addition to the exigent circumstances exception, to the constitutional prohibition against unreasonable searches and seizures.

It is to be noted that, in *Ramey,* following this one casual reference of a "consent to enter," there follows a full discussion of the meaning and import of the exigent circumstances exception to the general rule of invalidity per se. In the *Ramey* opinion, the sentence immediately following the sentence which refers to "consent to enter" reads as follows: "For the foregoing reasons we hold that the protection of article I, section 13, of the California Constitution and the Fourth Amendment of the federal Constitution against violation of the right of the people to be secure in their persons and houses against unreasonable seizures applies to arrests within the home, *and that warrantless arrests within the home are per se unreasonable in the absence of exigent circumstances."* (*Ramey, supra,* 16 Cal.3d 263, 275-276; fn. omitted.) (Italics added.)

After stating the issue solely in terms of a warrantless arrest within the home being unreasonable per se, in the absence of exigent circumstances, the *Ramey* court proceeds to discuss, as the remaining issue before it, the question of whether there were exigent circumstances present to justify the warrantless arrest in the situation presented in *Ramey.* The *Ramey* court defined "exigent circumstances" to mean "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." (*Ramey, supra,* 16 Cal.3d 263, 276.)

The *Ramey* court then proceeded to point out that none of the elements of exigent circumstances was present in the situation which the arresting officers faced in *Ramey.*

That the real emphasis in *Ramey* related only to the exception of exigent circumstances is also revealed in the court's statement contained in a footnote as follows: "We recognize that numerous prior decisions of this court and the California Courts of Appeal have assumed the legality of a warrantless entry into a home to make a felony arrest *in the absence of exigent circumstances,* providing there is probable cause. Accordingly, except as to the defendant in the case at bar, the rule we now adopt will apply only to arrests made after this opinion becomes final." (*Ramey, supra,* 16 Cal.3d 263, 276, fn. 7.) (Italics added.)

The majority in the case at bench takes the position that whether a "consent to enter" exception to the rule that a probable-cause-warrantless-arrest within the home is per se unreasonable, should be created, constitutes a policy decision beyond the proper scope of authority of an intermediate appellate court. Apparently the majority takes this position because of the one reference in *Ramey* to a "consent to enter" exception as being a part of the law of warrantless arrests in the home. I do not share the view of the majority that the issue presented before us constitutes a policy decision that is beyond the scope of our authority to make.

Since the statement of this exception in *Ramey* was only a casual reference and made without a full discussion of the basis for such an exception, as contrasted with the full discussion set forth with respect to the exigent circumstances exception, I do not consider that any rule of stare decisis precludes this intermediate appellate court from exercising its independent judgment of what constitutes a correct interpretation of the law of warrantless arrests made within the home—viewed in light of the constitutional proscriptions against unreasonable searches and sei-zures set forth in the California Constitution and the Fourth Amendment to the United States Constitution. On the contrary, we should not shirk our responsibility of determining the issue of the existence or nonexis-tence of a "consent to enter" exception—which is squarely presented before us—and which was not presented at all before the court in *Ramey.*

*Ramey* itself mandates this to be an appropriate procedure. Thus, *Ramey* points out that, prior to *Ramey,* the California cases had frequently referred to the statutory formula for making warrantless

arrests but had not realistically confronted the issue of the constitutionality of warrantless arrests, *made in the home.* In discussing the language used in the prior Supreme Court case of *People* v. *Privett* (1961) 55 Cal.2d 698 [12 Cal.Rptr. 874, 361 P.2d 602], the court remarked: "But this language, like that in *Coolidge,* was dictum; and while persuasive, it does not definitively resolve the constitutional question." (*Ramey, supra,* 16 Cal.3d 263, 273.)

The constitutional mandate against unreasonable searches and seizures and unreasonable arrests within an individual's home is designed to operate to safeguard the individual's personal property as well as the individual himself in the setting of his home. Basic allegiance to this constitutional principle of protection to the individual requires that police action be preceded by judicial authorization of an arrest warrant. Judicial authorization for an arrest constitutes necessary protection to the individual against hasty, unnecessary and ill-advised action by the police. Because there has to be an accommodation between competing policy principles of effective law enforcement and preserving the sanctity of the home, the law recognizes that if genuine emergencies exist, the broad constitutional mandate against arrests within the home without arrest warrants must give way to the necessity of immediate action.

There is every reason for holding that no public policy involved in effective law enforcement supports the creation of a rule that a "consent to enter" is sufficient to justify a warrantless arrest in the home, even though based upon probable cause, when no exigent circumstances are present which demand immediate action by the police. The creation of a "consent to enter" exception is likely to result in a substantial abrogation of the salutary general rule that police should secure judicial authorization of an arrest warrant whenever such action is feasible. The policy in favor of requiring police to obtain search warrants must be deemed the essential undergirding bulwark to the constitutional proscriptions against unreasonable searches and seizures.

The adoption of a rule of consent-to-enter as a justification for a probable-cause-warrantless-arrest in a home creates a substantial danger of encouraging police officers to proceed to a suspect's home to effectuate his arrest without making any effort to secure an arrest warrant, even though no circumstances are present to justify a failure to obtain judicial authorization for an arrest warrant. The adoption of a rule of consent-to-enter cannot escape the consequence of lending encouragement to police officers to approach a suspect's home and make the announce-

ment that the police are there to arrest the suspect and are seeking a consent-to-enter, with full knowledge by the police that this constitutes a good way to avoid going to the trouble of seeking an arrest warrant.

The factual situation presented in Brooks illustrates the vice and ill effects that will flow from the creation of the "consent to enter" exception for a warrantless arrest in the home. Here the officers announced to Carolyn Kennedy that they had come to the home to arrest Brooks and desired a consent-to-enter for that purpose. Is it logical to conclude that Kennedy's consent-to-enter that followed is a voluntary consent under these circumstances? In my view, the answer to this question is clearly in the negative. A request for permission to enter in the face of an announced purpose of being at the home to effect an arrest does not give the person who opens the door any real option to refuse the request.

Kennedy's consent under the circumstances present here was clearly a consent given under submission to police authority and becomes invalid as an involuntary consent even if there existed the rule that a voluntary "consent to enter" dispenses with the requirement of an arrest warrant. (See *People* v. *Wetzel* (1974) 11 Cal.3d 104 [113 Cal.Rptr. 32, 520 P.2d 416]; *People* v. *Michael* (1955) 45 Cal.2d 751 [290 P.2d 852]; *People* v. *McKelvy* (1972) 23 Cal.App.3d 1027 [100 Cal.Rptr. 661]; *Stern* v. *Superior Court* (1971) 18 Cal.App.3d 26 [95 Cal.Rptr. 541].) To hold that Kennedy's consent to the police officers to enter and arrest Brooks was a voluntary consent simply ignores the reality of human experience.

I would discharge the alternative writ and deny the petition for writ of mandate in Brooks (Civ. No. 50988) as well as in Kenner (Civ. No. 50766).

A petition for a rehearing was denied September 19, 1977, and the petitions of the real parties in interest and petitioner in No. 50766 for a hearing by the Supreme Court were denied October 27, 1977.