[Crim. No. 35794. Second Dist., Div. Two. May 16, 1980.]

**THE PEOPLE, Plaintiff and Respondent, v.
JESSEE HARRY CASE, Defendant and Appellant.**

## COUNSEL

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, John H. Scott, and Stephen F. Moeller, Deputy Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, District Attorney, Donald J. Kaplan and George M. Palmer, Deputy District Attorneys, for Plaintiff and Respondent.

## OPINION

**COMPTON, J.**—After an unsuccessful attempt, pursuant to Penal Code section 1538.5, to suppress certain evidence against him, defendant pleaded guilty to murder in the second degree. He appeals from the judgment of conviction which was entered pursuant to that plea and challenges the denial of his motion to suppress. We affirm.

The evidence which the defendant sought to suppress consisted of a confession made by him to an investigating officer after he had been arrested and while he was in custody. Defendant's motion to suppress was based on the assertion that his arrest was unlawful and that the police were guilty of improper conduct after the arrest.

### THE ARREST

Defendant was arrested on a public street at 7 a.m. on December 31, 1977, by Officer Senf of the Huntington Park Police Department. Officer Senf had worked closely with a Detective Stirling, who was investigating the murder with which defendant was ultimately charged. Officer Senf was aware of the information which was available to Detective Stirling and was also aware of an outstanding arrest warrant for defendant. Officer Senf testified that he arrested the defendant on the basis of information that he possessed plus the warrant.

### THE ARREST WARRANT

The warrant for defendant's arrest was issued on December 30, 1977, by a judge of the Municipal Court for the Southeast Judicial District of Los Angeles County on the basis of an affidavit executed and presented to the judge by Detective Stirling.

The affidavit contains the statement that Detective Stirling believed that defendant had committed the crime of murder and that probable cause existed to arrest him for that crime which had resulted in the

beating death of one Dorothy Johnson in her home in Huntington Park on December 27, 1977. This belief was supported by a summary of various items of evidence indicating that defendant was the slayer of Mrs. Johnson. Attached to the affidavit and incorporated by reference were 32 pages of police reports, chronicling the investigation and setting forth statements by a number of citizen-witnesses.

We have examined the affidavit and determined that it contained strong evidence pointing to defendant's guilt of the offense. We need not recount that evidence here since defendant does not challenge its sufficiency to establish probable cause to arrest him, nor does he claim that there was any improper delay in bringing defendant before the magistrate. His challenge to the warrant is based on the procedure and form used in its issuance.

The affidavit and warrant were contained on forms widely used in Los Angeles County since the decision of our Supreme Court in *People v. Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333]. The affidavit form is captioned "Probable Cause Complaint in Support of Felony Arrest Warrant." The warrant form contains citations to *People v. Ramey, supra,* and *People v. Sesslin* (1968) 68 Cal.2d 418 [67 Cal.Rptr. 409, 439 P.2d 321]. At the bottom of each form is the phrase "The complaint underlying this warrant of arrest does not initiate a criminal proceeding."

Defendant contends that a magistrate has no jurisdiction to issue a warrant of arrest in the absence of the institution of criminal proceedings. He relies on the wording of Penal Code section 813.

Penal Code section 813 provides in pertinent part as follows: "When a complaint is filed with a magistrate charging a public offense originally triable in the superior court...if such magistrate is satisfied from the complaint that the offense...has been committed and that there is reasonable ground to believe that the defendant has committed it, he must issue a warrant for the arrest of the defendant...."

Penal Code section 806 sets forth the requirement that proceedings before a magistrate on a felony charge, eventually triable in the superior court, must be commenced by a sworn written complaint. Defendant contends that the "complaint" referred to in this section is an accusatory pleading which initiates a criminal prosecution. From this he

extrapolates that before a warrant can be issued under Penal Code section 813, a criminal proceeding must have been "initiated" and the magistrate may not issue an arrest warrant in the absence thereof.

## DISCUSSION

As noted, the use of the so-called "*Ramey* Warrant" apparently had its genesis in the holding of *People* v. *Ramey, supra*, where it was held that the "seizure" of an individual inside his home, without a warrant, in the absence of exigent circumstances was an unreasonable "seizure" in violation of the Fourth Amendment to the United States Constitution and the similarly worded article I, section 13 of the California Constitution. *Ramey* thus reinforced the principle that the constitutional prohibition against unreasonable searches and seizures applies to persons as well as to property.

From a practical standpoint the use of the "*Ramey* Warrant" form, developed by the district attorney for employment by the police with the district attorney's concurrence, was apparently to permit, prior to an arrest, judicial scrutiny of an officer's belief that he had probable cause to make the arrest without involving the prosecutor's discretion in determining whether to initiate criminal proceedings.

Defendant argues that whenever a police officer makes an arrest he must do so with the intent to initiate criminal proceedings against the arrestee. Since the phrase used in the "*Ramey* Warrant" form to the effect that the underlying "complaint" does not "initiate a criminal proceeding" indicates, according to defendant, that no criminal proceedings are contemplated, he contends that the issuance of the warrant based on such a "complaint" is beyond the magistrate's jurisdiction.

Throughout the law of arrest, in referring to arrests both with or without a warrant, the statutes and cases use the terms "probable cause" or "reasonable cause." Those terms have a single meaning, to wit, reasonable belief that an individual is guilty of a crime. That term is distinguished from belief beyond a reasonable doubt—the test for conviction—because the law of arrest envisions that persons will be arrested who are not ultimately prosecuted or convicted.

It follows that there is no requirement that an officer, in making an arrest, either with or without a warrant, subjectively intend to initiate

formal criminal proceedings against the arrestee. The fact is that an officer has no authority to initiate such proceedings as that authority rests with the appropriate prosecuting official.

The Fourth Amendment to the United States Constitution and the identically worded article I, section 13 of the California Constitution, both provide in part simply that "...a warrant may not issue except on probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the *persons* or *things* to be seized." (Italics added.)

Nowhere in that language is there any suggestion that a formal prosecution be instituted as a condition precedent to issuing either a search warrant or an arrest warrant. It is a matter of common knowledge that most *search* warrants are issued prior to and independent of any pending prosecution.

California's statutory provisions for the issuance of an arrest warrant are designed to implement the above mentioned constitutional provision. Therefore they must be interpreted in light thereof.

We pause here to explore the role of the decision of *People* v. *Sesslin, supra,* 68 Cal.2d 418, as it pertains to these proceedings. Prior to that case the widely followed practice in California for obtaining warrants for the arrest of persons suspected of having committed felony offenses was to file with the magistrate, pursuant to Penal Code sections 813 and 806, a "complaint" which simply stated in statutory language and on information and belief that a named individual had committed a certain felony violation. An arrest warrant was generally issued automatically.

*Sesslin,* in conforming California practice to the requirements of *Giordenello* v. *United States* (1958) 357 U.S. 480 [2 L.Ed.2d 1503, 78 S.Ct. 1245], *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 86], and the Fourth Amendment to the United States Constitution, held that a warrant for an arrest or "seizure" of a person must be based on sufficient facts laid before the issuing magistrate to enable that magistrate to determine whether there was the requisite "probable cause."

That decision led to the practice in California of appending to the form "complaint" an affidavit, generally accompanied by copies of police reports, which advised the magistrate of the factual basis for the

complainant's belief that the named individual had committed a felony offense.

In the case before us, Detective Stirling followed that practice. Hence, insofar as *Sesslin* requires that the magistrate be provided with underlying factual information, that requirement was complied with.

■ Defendant here seeks to rely in some degree on our decision in *People* v. *Municipal Court* (1972) 27 Cal.App.3d 193 [103 Cal.Rptr. 645, 66 A.L.R.3d 717] in arguing the necessity of the district attorney instituting criminal proceedings against the defendant before a warrant of arrest can issue.

The primary objective of our opinion in *People* v. *Municipal Court, supra*, was to prevent the *initiation of criminal proceedings* by private citizens without the concurrence of the prosecuting authority that had the ultimate responsibility for prosecuting actions in the name of the People. That opinion in no way detracts from the ability of police officers—the only group empowered to execute arrest warrants—to seek arrest warrants from magistrates. Further, it is clear that the *"Ramey* Warrant" procedure has the concurrence of the district attorney.

The complete answer to defendant's contention as to the effect of the phrase "The complaint underlying this warrant of arrest does not initiate a criminal proceeding" is that it is nothing more than a correct statement of the law. The "complaint" referred to in Penal Code sections 813 and 806 does not, under any circumstances, "initiate a criminal proceeding." Hence the above referenced phrase is, in fact, a redundancy.

■ The only method of *initiating a criminal proceeding* in California is the filing of an accusatory pleading in the court having trial jurisdiction over the charged offense. In California, that pleading is either a complaint filed in the municipal court or justice court in the case of a misdemeanor or an indictment or information filed in the superior court in the case of a felony.

The requirement that the filing of an information be preceded by a preliminary hearing before a magistrate and a commitment by the magistrate based on probable cause is a creature of statute (Pen. Code, §§ 737, 738, 872) and is designed to satisfy the due process requirement of the Fourteenth Amendment to the United States Constitution by

serving as a substitute for the control on prosecutorial power provided by the Fifth Amendment to the United States Constitution requiring all prosecutions for infamous crimes to proceed by way of grand jury indictment.

Neither the preliminary hearing nor the proceedings before a grand jury amount to the "institution of criminal proceedings." They are, instead, inquiries into whether there is available sufficient evidence to warrant the institution of criminal proceedings.

 Reported decisions in cases interpreting Penal Code section 872[1] have uniformly held that the "complaint" filed with the magistrate under Penal Code sections 813 and 806 serves *only* the purpose of providing a basis for the issuance of a warrant of arrest. Once an individual is arrested and is before the magistrate, the "complaint" is *functus officio* and the magistrate may commit the arrestee on any charge shown by the evidence presented even though such charge is not the one originally alleged in the "complaint." (*People* v. *Tibbitts* (1925) 71 Cal.App. 709 [236 P. 217]; *People* v. *Lee Look* (1904) 143 Cal. 216 [76 P. 1028]; *Wells* v. *Justice Court* (1960) 181 Cal.App.2d 221 [5 Cal.Rptr. 204]; *People* v. *Storke* (1919) 39 Cal.App. 633 [179 P. 527].)

The "complaint," as that term is used in Penal Code section 813, is not a formal accusatory pleading filed in a court with trial jurisdiction over the offense. Hence it does not institute a criminal proceeding. It is instead simply the basis for conducting a hearing to determine if probable cause exists to hold the person for trial. (Pen. Code, § 806.)

 In conclusion then the "complaint" filed by Detective Stirling met all of the requirements of Penal Code sections 806 and 813, and *People* v. *Sesslin, supra*. It was a sworn affidavit containing more than sufficient factual material to satisfy a reasonable magistrate that there was probable cause to believe defendant was guilty of murder. The warrant based thereon was valid. Defendant's arrest was proper either on the basis of the warrant or as a warrantless arrest pursuant to Penal Code section 836 inasmuch as defendant was arrested on a public street.

---

[1]Penal Code section 872 provides: "If, however, it appears from the examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof, the magistrate must make or indorse on the complaint an order, signed by him, to the following effect: 'It appearing to me that the offense in the within complaint mentioned (or any offense, according to the fact, stating generally the nature thereof), has been committed, and that there is sufficient cause to believe the within named A.B. guilty thereof, I order that he be held to answer to the same.'"

### DEFENDANT'S REMAINING
### CONTENTIONS

Shortly after defendant was booked in the Huntington Park police station, he was visited by his girl friend. The two were permitted to talk while defendant was in a booking cage and the girl friend was in a small room adjacent to the booking office and separated therefrom by a window.

The conversation was, without their knowledge, monitored and tape recorded by the police. Later, apparently because of the officer's knowledge of things said during that conversation, defendant confessed to the murder.

The officer's conduct was proper. The physical setup of the booking office and the room from which the girl friend spoke to defendant could not reasonably have given either of them any expectation of privacy. Incarcerated persons generally have no such expectations. (*People v. Estrada* (1979) 93 Cal.App.3d 76 [155 Cal.Rptr. 731]; *People v. Hill* (1974) 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1]; *North v. Superior Court* (1972) 8 Cal.3d 301 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155].) Here there was nothing that the officer did or said to defendant or his girl friend which could have provided an exception to that general rule.

Since there were no constitutional grounds for suppressing defendant's confession, none of defendant's remaining contentions concerning that confession suggest any constitutional or jurisdictional grounds affecting the proceedings which resulted in his plea of guilty. Thus they are not cognizable in this appeal. (*People v. DeVaughn* (1977) 18 Cal. 3d 889 [135 Cal.Rptr. 786, 558 P.2d 872].)

The judgment is affirmed.

Fleming, Acting P. J., and Beach, J., concurred.

A petition for a rehearing was denied June 5, 1980, and appellant's petition for a hearing by the Supreme Court was denied July 9, 1980.