[No. B149818. Second Dist., Div. Five. June 26, 2001.]

MICHAEL FRANK GOODWIN, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY SHERIFF'S DEPARTMENT et al., Real
Parties in Interest.

**COUNSEL**

Jeffrey S. Benice for Petitioner.

No appearance for Respondent.

Steve Cooley, District Attorney, Brentford J. Ferreira and Shirley S. N. Sun, Deputy District Attorneys, for Real Parties in Interest.

## OPINION

## WILLHITE, J.*—

### INTRODUCTION

California law grants jurisdiction to issue many types of arrest warrants. Thus, for instance, when a criminal complaint is filed, a magistrate may issue an arrest warrant for the accused. (Pen. Code, § 813.) When the grand jury returns an indictment, the court may issue a warrant for the person indicted if he fails to appear for arraignment. (Pen. Code, §§ 945, 979.) Before the filing of criminal charges, the court may authorize a residential arrest by issuing a so-called *Ramey* warrant (*People v. Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333]; now codifed as Pen. Code, § 817). The instant case, however, involves none of these standard warrants. Rather, it involves a court order of a novel kind—an ex parte order, issued before the institution of any criminal proceedings, compelling a person who is out of custody to appear at a lineup and submit himself to custody for that limited purpose. We hold that California law does not confer jurisdiction to enter such an order. Hence, we will grant a peremptory writ of prohibition restraining the trial court from enforcing it.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 16, 1988, Mickey Thompson and his wife, Trudy, were shot to death at their home in Bradbury, located in the San Gabriel Valley. Their assailants escaped on bicycles. Petitioner and Thompson had been business partners in a venture to promote stadium motocross events. However, the partnership lasted only months and ended in litigation, which petitioner lost. Thompson and petitioner then became fierce competitors and archrivals. Although the Thompson murders remain unsolved, law enforcement believes that petitioner is a prime suspect as the person who hired the killers. Petitioner contends he is innocent and has been wrongfully pursued for over 13 years.[1]

On March 28, 2001, the same day petitioner held a press conference in Orange County to proclaim his innocence, Detective Mark Lillienfeld of the

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] In March 2001, an Orange County Grand Jury was impaneled to investigate the Thompson murders. Petitioner contends Thompson's sister, Colleen Campbell, who inherited Thompson's business, persuaded her friend and ally, the District Attorney of Orange County, to launch the investigation. Petitioner also accuses the sheriff's investigators of being Campbell's "pawn."

Los Angeles County Sheriff's Department (the Sheriff) sought an order from respondent court, ex parte, compelling petitioner to attend a lineup at the Los Angeles County jail. In support of the request, Detective Lillienfeld filed an affidavit under seal.[2] Respondent court issued the requested order, which directed the Sheriff to conduct a lineup on April 17, 2001, in which petitioner would be a participant. The court ordered the Sheriff "to take [petitioner] into the secure area of the jail for the purpose of conducting the lineup for the period of time necessary to do so." It further ordered petitioner to "appear at the Los Angeles County Men's Central Jail for the purposes of the lineup at the scheduled time," and to cooperate with all directions and procedures connected with the lineup. On the evening of March 28, 2001, the order was served on petitioner at his home.

On April 16, 2001, the day before the scheduled lineup, petitioner filed an ex parte application to quash the order. Petitioner asserted the order was void because it: (1) constituted an improper "seizure" of petitioner without probable cause, in violation of petitioner's Fourth Amendment rights; (2) failed to include an advisement that petitioner was entitled to counsel at the lineup (*People v. Williams* (1971) 3 Cal.3d 853, 856 [92 Cal.Rptr. 6, 478 P.2d 942]); and (3) violated petitioner's Fourteenth Amendment due process rights, because it was obtained "as part of a scheme of prosecutorial and investigatory misconduct."

After a hearing on April 26, 2001, respondent court denied petitioner's motion to quash. The court found there was probable cause to issue the order based on the affidavit of Detective Lillienfeld, and there was sufficient information to sign a *Ramey* warrant "if one was submitted to me." The court modified the order to read "probable cause having been shown" (in place of "good cause having been shown"), and dated the modified order April 26, 2001. The court also ordered that petitioner be permitted to have counsel at the lineup. The court continued the matter to May 7, 2001, to determine the status of the appellate review and to set a new date for the lineup.

Petitioner filed this petition on May 7, 2001, seeking an immediate stay of the order. Initially, petitioner's stay request was denied. Since petitioner had failed to obtain a stay from this court, respondent court set the lineup for May 10, 2001.

On May 8, 2001, we issued a stay order and directed the People, on behalf of the Sheriff as real party in interest, to file an informal opposition to the petition. For purposes of clarity, we refer to the Sheriff as the real parties in interest. The Sheriff filed an informal opposition on May 16, 2001. On May

[2]The affidavit has been filed with this court under seal.

17, 2001, we issued an alternative writ of mandate. The Sheriff filed a return on June 4, 2001.[3]

## DISCUSSION

■ We first dispose of the Sheriff's contention that the trial court's order denying petitioner's motion to quash may not be reviewed by extraordinary writ. We deem the petition to be one requesting a writ of prohibition to restrain the trial court from enforcing its order compelling petitioner to appear at the lineup. " 'A writ of prohibition is an appropriate remedy to arrest the proceedings of a court when there is not a plain, speedy, and adequate remedy in the ordinary course of the law and when the proceedings of the court are without or in excess of its jurisdiction. [Citations.]' " (*Running Fence Corp. v. Superior Court* (1975) 51 Cal.App.3d 400, 431-432 [124 Cal.Rptr. 339]; see *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 291 [109 P.2d 942, 132 A.L.R. 715]; *De Luca v. Superior Court* (1968) 262 Cal.App.2d 254, 261 [68 Cal.Rptr. 535].) Here, petitioner plainly has no adequate remedy at law. Further, we will conclude the trial court lacked jurisdiction to enter the order compelling petitioner to appear at the lineup. Thus, prohibition lies.

Before discussing the merits of the specific order in issue, let us set forth certain matters with which we have no quarrel. We do not question the wisdom of a procedure whereby a court may issue an order ex parte, on an adequate showing and before institution of criminal charges, compelling a suspect who is out of custody to attend a lineup. Such a procedure serves the interest of obtaining prior judicial authorization before an intrusion on personal liberty. We also do not question the motives that prompted the Sheriff to proceed in this fashion. Indeed, we commend the instinct to obtain prior judicial approval.

■ Further, we perceive no constitutional impediment to such a procedure. There is no Fifth Amendment privilege not to attend a lineup. (*People v. Johnson* (1992) 3 Cal.4th 1183, 1221-1222 [14 Cal.Rptr.2d 702, 842 P.2d 1].) Also, a seizure of one's person for transportation to a lineup, supported by probable cause, clearly would not violate the Fourth Amendment. (See *Michigan v. Summers* (1981) 452 U.S. 692, 696-697 [101 S.Ct. 2587, 2591,

---

[3]In addition to the return, the Sheriff submitted under seal a declaration by Detective Lillienfeld. Because this declaration was not presented to the trial court, we decline to consider it. (*People v. Superior Court (Lavi)* (1993) 4 Cal.4th 1164, 1173-1174, fn. 5 [17 Cal.Rptr.2d 815, 847 P.2d 1031].) Likewise, we decline to consider petitioner's supplemental memorandum of points and authorities and its attached exhibits filed in this court, none of which were presented below. (*Ibid.*)

69 L.Ed.2d 340].) So, too, an order to appear at a lineup on such a showing would comply with Fourth Amendment standards of reasonableness.[4]

 Despite these principles, petitioner contends that he possesses a constitutional right not to attend a preindictment lineup. He finds this supposed right in the confluence of due process and the right to counsel. However, he has provided us with no authority declaring such a right, and we have found none. Indeed, our Supreme Court has stated that "a defendant generally has no right to refrain from participating in a lineup." (*People v. Hart* (1999) 20 Cal.4th 546, 625 [85 Cal.Rptr.2d 132, 976 P.2d 683].) The reasons for this general rule are clear. While a defendant possesses a due process right to *suppress evidence* obtained at an impermissibly suggestive lineup (see *People v. Gordon* (1990) 50 Cal.3d 1223, 1242-1244 [270 Cal.Rptr. 451, 792 P.2d 251]), no court has found a concomitant due process right *not to participate in* a lineup. Further, under federal law petitioner has *no right* to an attorney at a lineup held before the initiation of adversary criminal proceedings. (*Kirby v. Illinois* (1972) 406 U.S. 682, 683 [92 S.Ct. 1877, 1879, 32 L.Ed.2d 411] (plur. opn. of Stewart, J.).) In *People v. Bustamante* (1981) 30 Cal.3d 88, 102 [177 Cal.Rptr. 576, 634 P.2d 927], the California Supreme Court granted a state constitutional right to counsel at a preindictment lineup. However, the passage of Proposition 8 on the June 8, 1982 ballot abrogated *Bustamante's* exclusionary rule when that right is violated. (*People v. Johnson, supra*, 3 Cal.4th at pp. 1222-1223.)

More importantly, the right to counsel at a lineup is a limited one. Thus, the attorney " 'may not insist law enforcement officials hear his objection to procedures employed, nor may he compel them to adjust their lineup to his views of what is appropriate. [Citation.] [¶] At most, defense counsel is merely present at the lineup to silently observe and to later recall his observations for purposes of cross-examination or to act in the capacity of a witness. . . .' " (*People v. Bustamante, supra*, 30 Cal.3d at p. 99, fn. 7; see *People v. Carpenter* (1997) 15 Cal.4th 312, 368 [63 Cal.Rptr.2d 1, 935 P.2d 708] [purpose of counsel at lineup is to detect any unfairness and ensure awareness of suggestiveness by law enforcement]; see also *People v. Wimberly* (1992) 5 Cal.App.4th 773, 786 [7 Cal.Rptr.2d 152].) Given these

---

[4]We have reviewed the affidavit filed under seal. Like the trial court, we conclude that probable cause exists for petitioner's arrest. The Sheriff argues that the order in this case does no more than authorize a temporary detention of petitioner, and that such a temporary detention may be supported by facts less than probable cause. Because, we find that the court lacked jurisdiction to issue the appearance order, and in any event there is probable cause to arrest petitioner, we express no opinion on the general issue whether an order authorizing a temporary detention for purposes of a lineup may be justified on a showing less than probable cause. (See *Davis v. Mississippi* (1969) 394 U.S. 721, 727-728 [89 S.Ct. 1394, 1398, 22 L.Ed.2d 676] [observing that a detention solely for the purpose of fingerprinting might meet Fourth Amendment standards "even though there is no probable cause in the traditional sense"].)

severe constraints on the attorney's participation, the right to counsel clearly does not imply a subsidiary right not to participate in a lineup. If the attorney cannot object to the lineup procedures and is present solely to observe, certainly the client's right to the attorney's presence confers no implied right to stop the lineup by declining to participate.

 The foregoing observations, though necessary to our decision, do not ultimately resolve the case before us. The absence of constitutional proscriptions, and the wisdom and noble motives of pursuing such a procedure, do not vest jurisdiction in a trial court to grant the order at issue. That power must be conferred by California law. On examination, we can find no such grant of authority. While the absence of such jurisdiction may be remedied, that task is for our Legislature, not this court.

We turn to the merits of the specific order before us. The Sheriff contends that in *Davis v. Mississippi, supra,* 394 U.S. at page 728 [89 S.Ct. at page 1398], the high court established a "general requirement that the authorization of a judicial officer be obtained in advance of [a] detention." Given this observation, the Sheriff maintains that judges must have authority to issue warrants authorizing temporary investigative detentions to conduct lineups. As the source of that authority in California, the Sheriff relies on Code of Civil Procedure section 187, which grants the court power to use all necessary means to carry its jurisdiction into effect.[5]

The argument is unpersuasive. In *Davis,* the police took the petitioner into custody without a warrant, and held him for two days. While he was confined, they interrogated him and took his fingerprints. (*Davis v. Mississippi, supra,* 394 U.S. at p. 723 [89 S.Ct. at pp. 1395-1396].) The Supreme Court held that the manner in which the fingerprints were obtained violated the Fourth Amendment. (*Id.* at p. 728 [89 S.Ct. at p. 1398].) In the course of its discussion, the court hypothesized that "[i]t is arguable . . . that[] because of the unique nature of the fingerprinting process, such detentions [to obtain fingerprints] might, under narrowly defined circumstances, be found to comply with the Fourth Amendment even though there is no probable cause in the traditional sense." (*Ibid.* [89 S.Ct. at pp. 1397-1398].) The court noted, however, that although fingerprinting is a limited intrusion on personal liberty, "the general requirement that the authorization of a judicial officer be obtained in advance of the detention would seem not to

---

[5]Code of Civil Procedure section 187 states: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

admit of any exception in the fingerprinting context." (*Ibid.* [89 S.Ct. at p. 1398].)

We will assume that a detention for a properly conducted lineup is analogous to the limited intrusion required for fingerprinting. Nonetheless, *Davis* has no application to the instant case.

Here, the order at issue is much more than a "warrant" for an "investigative detention." That is, it does more than simply authorize the Sheriff to "detain" petitioner for the brief period during the lineup. Rather, it purports to exercise jurisdiction over the person of petitioner, and *to compel him* to "appear at the Los Angeles County Men's Jail for the purposes of the lineup at the scheduled time." Thus, it is less a warrant authorizing the Sheriff to detain him than it is an order compelling petitioner to "detain" himself.

The Sheriff cites *People v. Sequeira* (1981) 126 Cal.App.3d 1 [179 Cal.Rptr. 249] as conferring jurisdiction to issue such an appearance order. However, that decision is inapposite. In *Sequeira*, the police requested an order authorizing the transfer of the defendant from San Mateo County, where he was incarcerated on unrelated charges, to San Francisco County Jail for the purpose of appearing in a precomplaint lineup (*Id.* at p. 13 & fn. 4.) The request was supported by an affidavit stating probable cause to believe defendant had participated in several bank robberies. (*Id.* at pp. 13-14.) The trial court granted the order. (*Id.* at p. 14.) On appeal, the defendant argued that the lineup, at which he was identified by two witnesses, was "the fruit of an illegal transportation of his person." (*Id.* at p. 13.) The Court of Appeal rejected the challenge to the order.

The court reasoned in part that there were two statutory bases for issuance of the order. First, the court relied on section 187 of the Code of Civil Procedure. It reasoned that section 187 vests "trial courts . . . with all the means necessary to carry their jurisdiction into effect. Pursuant to section 187, the courts have inherent authority to adopt any suitable mode of exercising their jurisdiction, and may adopt any order appropriate for that purpose. [Citation.] Here, the trial court's order transferring appellant to its jurisdiction to participate in a lineup was a proper exercise of its authority under section 187 to 'carry into effect' a criminal proceeding against appellant." (*People v. Sequeira, supra,* 126 Cal.App.3d at p. 14, fn. omitted.)

Second, the court found authority for the order in Penal Code section 1567.[6] As reasoned by the court, "[Penal Code s]ection 1567 authorizes a trial court to order a prisoner before it from another jurisdiction for the benefit of the court and for any lawful purpose. [Citations.] If the court can order a prisoner to its jurisdiction for purposes of trial pursuant to [Penal Code] section 1567, a fortiori it also has the authority to cause a prisoner to be brought before it for a pretrial proceeding such as a lineup." (*People v. Sequeira, supra,* 126 Cal.App.3d at p. 14.)

The decision in *Sequeira* does not authorize the instant order. Clearly, its discussion of Penal Code section 1567 does not apply. Here, petitioner is not a prisoner. Rather, he is out of custody.[7] More importantly, *Sequeira*'s partial reliance on section 187 of the Code of Civil Procedure is misplaced. Section 187 itself does not confer jurisdiction where such jurisdiction does not otherwise exist. As our Supreme court has stated, "By its terms, . . . section 187 operates only where some other provision of law confers judicial authority *in the first instance.*" (*People v. Gonzalez, supra,* 51 Cal.3d at p. 1257, original italics; see *Traffic Truck Sales Co. v. Justice's Court* (1923) 192 Cal. 377, 382 [220 P. 306]; *People v. Ainsworth* (1990) 217 Cal.App.3d 247, 254-255 [266 Cal.Rptr. 175].) Before the institution of criminal proceedings by the filing of a complaint, there is no criminal case over which the court may exert its jurisdiction. Therefore, at that point, the power under Code of Civil Procedure section 187 to use "all the means necessary to carry [such jurisdiction] into effect" does not exist. That a criminal proceeding may be instituted *after* a lineup is held does not confer jurisdiction to issue an order to attend the lineup *before* the criminal proceeding arises.

■ We also find no substantive analogy between the power to issue a *Ramey* warrant for a residential arrest before criminal charges are filed, and the supposed power to issue the instant order. In *People v. Ramey, supra,* 16 Cal.3d 263, the People argued that Penal Code section 836 authorized a warrantless arrest whenever the police have probable cause to believe that the suspect has committed a felony, and that the only statutory limitation in effectuating a residential arrest is the knock-notice requirement of Penal

[6]In relevant part, Penal Code section 1567 states: "When it is necessary to have a person imprisoned in the state prison brought before any court, or a person imprisoned in a county jail brought before a court sitting in another county, an order for that purpose may be made by the court and executed by the sheriff of the county where it is made. The order shall be signed by the judge or magistrate and sealed with the seal of the court, if any. . . ."

[7]We express no opinion on *Sequeira*'s reasoning under Penal Code section 1567. We note, however, that in *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1258 [275 Cal.Rptr. 729, 800 P.2d 1159], the Supreme Court cited *Sequeira* with the less than enthusiastic comment: "invoking [Penal Code section] 1567, which *arguably* grants a superior court any 'necessary' power to bring a prisoner before it from another jurisdiction." (Italics added.)

Code section 844. (16 Cal.3d at pp. 270-271.) The holding of *Ramey* is a constitutional limitation on this statutory authority to arrest. Relying on both the state and federal Constitutions, the California Supreme Court held that "the right of the people to be secure in their persons and houses against unreasonable seizures applies to arrests within the home, and that warrantless arrests within the home are per se unreasonable in the absence of exigent circumstances." (*Id.* at pp. 275-276, fn. omitted.) Subsequently, the United States Supreme Court likewise held that the Fourth Amendment prohibits the police from making a warrantless and nonconsensual entry into a suspect's home to make a routine felony arrest. (*Payton v. New York* (1980) 445 U.S. 573, 588-590 [100 S.Ct. 1371, 1381-1382, 63 L.Ed.2d 639].)

To comply with *Ramey* and *Payton*, prosecutors developed the use of a *Ramey* warrant form, to be presented to a magistrate in conjunction with an affidavit stating probable cause to arrest. (*People v. Bittaker* (1989) 48 Cal.3d 1046, 1070-1071 [259 Cal.Rptr. 630, 774 P.2d 659]; *People v. Case* (1980) 105 Cal.App.3d 826, 831 [164 Cal.Rptr. 662]; see now Pen. Code, § 817, enacted 1995.) In considering *Ramey* warrants before passage of Penal Code section 817, the California Supreme Court held that "[n]either constitutional nor statutory directives concerning warrants require that criminal proceedings must be instituted before an arrest warrant may be issued." (*People v. Bittaker, supra,* 48 Cal.3d at p. 1071, fn. omitted.) The court reasoned: "It is apparent that the 'complaint,' as the term is used in the Penal Code,[8] serves two different purposes. One is to initiate criminal proceedings; the other to demonstrate probable cause for an arrest warrant. A complaint can be used to institute criminal proceedings without serving as a basis for an arrest warrant, and we see no reason why the converse may not also serve—that a complaint can furnish probable cause for arrest even though a different document is used to institute proceedings. The important point . . . is that probable cause was shown to support the issuance of the arrest warrant; it is immaterial whether that same document initiated criminal proceedings . . . ." (*Ibid.*)

The *Ramey* warrant procedure as described by the Supreme Court does not apply to the present case. As we have noted, the instant order is not

---

[8]The court was referring to Penal Code sections 806 and 813, both of which have since been amended in ways not significant to the current case.

Penal Code section 806 now states in relevant part: "A proceeding for the examination before a magistrate of a person on a charge of a felony must be commenced *by written complaint* under oath subscribed by the complainant and filed with the magistrate." (Italics added.)

Penal Code section 813, subdivision (a) currently states in relevant part: "When a *complaint* is filed with a magistrate charging a felony . . . [,] if . . . the magistrate is satisfied from the *complaint* that the offense . . . has been committed and that there is reasonable ground to believe that the defendant has committed it, the magistrate shall issue a warrant for the arrest of the defendant . . . ." (Italics added.)

a simple arrest warrant, commanding a peace officer to arrest petitioner. (See 4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Pretrial Proceedings, § 18, pp. 216-217; see also Pen. Code, §§ 817, subd. (f) [suggesting form for warrant of probable cause for arrest], 814 [suggesting form for arrest warrant issued under Pen. Code, § 813].) Rather, it commands petitioner to appear at the county jail on a particular date, in order to be taken into custody for a lineup. Neither the Penal Code nor our Supreme Court's discussion of the authority to issue *Ramey* warrants purports to confer such the power over the person of petitioner. Moreover, the Supreme Court has recognized that the presentation of a probable cause affidavit and the issuance of a *Ramey* warrant do not institute a criminal proceeding. (*People v. Bittaker, supra,* 48 Cal.3d at p. 1071; see also Pen. Code § 817, subd. (a)(2).) Thus, in the instant case, the mere presentation of the affidavit to the lower court and the issuance of the appearance order did not create a criminal proceeding through which the court could exercise jurisdiction over petitioner.[9]

## CONCLUSION

We end our discussion where we began. There is wisdom in a procedure authorizing an ex parte order, on an adequate showing and before criminal proceedings are brought, compelling a suspect who is out of custody to attend a lineup. Further, there is no constitutional impediment to such a procedure. However, despite the best intentions of the Sheriff and respondent court, that procedure does not currently exist in California law. The court therefore lacked jurisdiction to grant the order at issue.

## DISPOSITION

A peremptory writ of prohibition shall issue restraining the superior court from enforcing its order of March 28, 2001 (modified on April 26, 2001)

---

[9]The order at issue is actually in the nature of a mandatory injunction, compelling petitioner to appear at a lineup. (See *Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 446 [60 Cal.Rptr.2d 641] [injunction is "mandatory if it compels performance of an affirmative act that changes the position of the parties"].) Of course, injunctive procedure was not used here. However, even if it were, it would be wholly problematic. For instance, it would require the filing of a verified complaint stating a cause of action, and a showing of irreparable injury. (Code Civ. Proc., § 527.) The Civil Discovery Act of 1986 would apply. (See Code Civ. Proc., § 2016 et seq.) Assuming an appeal would be filed, the mandatory injunction compelling petitioner to attend the lineup would be stayed pending appeal. (Code Civ. Proc., § 916; see 6 Witkin, Cal. Procedure (4th ed. 1997) Provisional Remedies, § 400, p. 325.) Thus, injunctive procedure, if attempted, would almost certainly prove unsatisfactory. As we have stated, the solution is legislation granting ex parte jurisdiction to issue an order, on an adequate showing, compelling a suspect to attend a lineup.

compelling petitioner to appear at Los Angeles County jail for participation in a lineup.

Turner, P. J., and Armstrong, J., concurred.