[No. B241132. Second Dist., Div. Three. Aug. 16, 2012.]

GARY SWARTHOUT, as Warden, etc., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CULVER CITY POLICE DEPARTMENT, Real Party in Interest.

**COUNSEL**

Kamala D. Harris, Attorney General, Jennifer A. Neill, Assistant Attorney General, Julie A. Malone and Nikhil D. Cooper, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Carol A. Schwab, City Attorney, and Lisa A. Vidra, Deputy City Attorney; Law Offices of E. Thomas Dunn, Jr., and E. Thomas Dunn, Jr., for Real Party in Interest.

Steve Cooley, District Attorney, Irene T. Wakabayashi, Head Deputy District Attorney, and Phyllis C. Asayama, Deputy District Attorney, for the People.

**OPINION**

**CROSKEY, J.**—Petitioner Gary Swarthout, warden of California State Prison, Solano, challenges, by petition for writ of mandate, the order of the Los Angeles Superior Court requiring him to temporarily transfer inmate J.T. to the Los Angeles County Men's Central Jail for investigative purposes. As the trial court lacked authority to issue the transfer order, we grant the petition.

## *FACTUAL AND PROCEDURAL BACKGROUND*

J.T. was convicted of second degree murder and first degree burglary in 1987, and sentenced to prison for a term of 19 years to life. He is currently housed at California State Prison, Solano, where Swarthout is the warden.

On April 19, 2012, the Culver City Police Department sought an order for the temporary transfer of J.T. to the Los Angeles County Men's Central Jail (L.A. Jail) for investigative purposes. The request for the order was made by means of an affidavit filed under seal.[1] The affidavit sought the temporary transfer of J.T. in connection with the Culver City Police Department's investigation of another crime, an investigation which purportedly could not take place without the transfer of J.T. The Los Angeles Superior Court, which had no proceeding pending against or involving J.T., issued the order.[2]

The order was faxed to Warden Swarthout, who immediately contacted counsel in the Attorney General's Office. Warden Swarthout and the Attorney General took the position that the trial court lacked jurisdiction to issue the transfer order. Unable to resolve the matter informally with the deputy district attorney who was working on the current investigation, Warden Swarthout filed a request to reconsider and vacate the transfer order.

A hearing was held on May 1, 2012. At the hearing, the trial court asked the deputy attorney general the basis for the warden's opposition to the transfer order; the deputy attorney general responded that the order was without legal basis. When pressed, the deputy attorney general also argued that, during the temporary transfer, J.T. would remain in the constructive custody of the warden, leaving the warden potentially subject to liability if J.T. were to attack the guards during the transfer. The court reviewed the sealed affidavit, and again ordered the temporary transfer of J.T.

On May 11, 2012, Warden Swarthout filed a petition for writ of mandate. By order of May 16, 2012, we requested opposition to be filed by the Los Angeles County District Attorney's Office (District Attorney). By letter of May 22, 2012, the District Attorney indicated that it did "not believe it [could] represent the Culver City Police Department in the writ petition before this court." The District Attorney forwarded the writ petition and our request for opposition to the City Attorney of Culver City (City), indicating that the city attorney would be the proper party to respond. By letter of May 24, 2012, the city attorney disagreed, stating that the District Attorney should, in fact, respond to the writ petition and that the City not be

---

[1] The affidavit has been filed under seal with this court, as well. We therefore discuss it in only the most general terms.

[2] We have not been asked to consider whether the affidavit set forth good cause for the trial court's order. We therefore express no opinion on the matter.

designated the responding party. On May 30, 2012, we issued an order to show cause, and directed both the District Attorney and the city attorney[3] to file briefs.

## CONTENTIONS OF THE PARTIES

Warden Swarthout contends that there was no authority for the trial court's order. Specifically, Warden Swarthout argues that there are statutes which provide for an order transferring a prison inmate to a county jail for specific purposes (Pen. Code, §§ 2620, 2621), and the trial court's order in this case does not fall within the scope of those statutes. The District Attorney takes the position that the trial court's order was valid, but unenforceable. That is to say, the District Attorney argues that Warden Swarthout possesses the authority to temporarily transfer J.T. if he chooses to do so, and that the court's transfer order could be interpreted as a request that Warden Swarthout transfer J.T. The District Attorney concedes, however, that without Warden Swarthout's consent, the trial court could not compel the transfer of J.T. The City agrees that there is no statutory basis for the trial court's transfer order, but contends that it can be upheld as an exercise of the trial court's inherent authority to enable it to carry out its duties and ensure the orderly administration of justice. We conclude that there is no statutory basis for the transfer order, nor can it be upheld as a proper exercise of the trial court's inherent authority. We therefore grant the petition for writ of mandate.

## DISCUSSION

■ Penal Code section 2620 provides that a court may issue an inmate transfer order "[w]hen it is necessary to have a person imprisoned in the state prison brought before any court to be tried for a felony, or for an examination before a grand jury or magistrate preliminary to such trial, or for the purpose of hearing a motion or other proceeding, to vacate a judgment." Similarly, Penal Code section 2621 provides for a transfer order when a prison inmate is a material witness whose testimony is required in a criminal action.[4] As J.T.'s transfer was not sought for a criminal appearance, or as a material witness in a criminal action,[5] neither of these statutes applies.

The issue then becomes whether the statutes set forth the *only* situations in which a trial court may order a state prisoner's transfer. The City argues that

---

[3] The brief filed on behalf of the City was ultimately filed by outside counsel associated in by the city attorney.

[4] Both Penal Code sections 2620 and 2621 provide that, when the prisoner is transferred, the prisoner shall remain in the constructive custody of the prison warden.

[5] If a prison inmate is a witness in a civil action, his testimony may be obtained by deposition in prison (Pen. Code, § 2623) or by two-way electronic audiovisual communication (Pen. Code, § 2624).

they do not, and that, instead, the trial courts have a common law power to order the temporary transfer of inmates on good cause. We disagree, for the following three reasons: first, language in Supreme Court authority strongly implies that trial courts lack the nonstatutory power to order inmate transfers; second, a statute confirming the courts' inherent powers (Code Civ. Proc., § 187) has been held not to apply to transfer orders when there is no existing judicial proceeding; and third, any inherent powers of the courts exist only to enable courts to carry out their *judicial* functions, while this transfer was sought for the purposes of an investigation, an executive branch function. We discuss each reason below.

### 1. *Supreme Court Language Strongly Suggests Courts Lack the Nonstatutory Power to Transfer Inmates*

First, we consider language in *Payne v. Superior Court* (1976) 17 Cal.3d 908 [132 Cal.Rptr. 405, 553 P.2d 565]. In *Payne*, our Supreme Court considered whether an indigent prison inmate who is the defendant in a civil action suffers a deprivation of his due process right of access to the courts when he is denied the right to personally appear and cannot afford a lawyer to represent him. The court concluded that an indigent inmate civil defendant in these circumstances would suffer a constitutional deprivation, and then turned to the issue of remedy. (*Id.* at pp. 922–923.) The Supreme Court noted that in some cases, counsel should be appointed for the indigent inmate civil defendant. (*Id.* at p. 923.) The court continued, "While this remedy will probably suffice in most cases, in other instances it may also be desirable for the prisoner to testify on his own behalf. Accordingly, when the trial court determines on motion that the in-court testimony of a prisoner defendant— whether indigent or not—is needed to protect the due process rights of the parties, *it may attempt, through the Department of Corrections, to arrange the presence of the prisoner. Except in a few specified circumstances, a court has no statutory authority to command the Department of Corrections to transport a prisoner to a civil courtroom. But judges do have a constitutional duty to uphold the due process clause. Accordingly, if a court determines that a prisoner's personal testimony is needed to preserve due process rights, but the Department of Corrections refuses accommodation, the court may order a continuance or employ other alternatives to transporting the prisoner*, such as recording his testimony or if feasible holding a portion of the trial at the prison."[6] (*Id.* at pp. 924–925, italics added.) The language we have emphasized indicates that our Supreme Court is of the opinion that trial courts lack the power to transfer inmates outside of the situations specifically provided

---

[6] Relying on this language, the District Attorney argues that the trial court's order in this case was simply a *request* that Warden Swarthout transfer the prisoner, with which Warden Swarthout was entitled not to comply. We disagree. In this case, the trial court ordered the warden to temporarily release J.T. to the custody of the Los Angeles County Sheriff, who was

for by statute. Surely, if our Supreme Court believed that trial courts possessed a common law power to order inmate transfers outside the scope of their statutory powers to do so, it would be a proper exercise of that power to order an inmate's transfer to preserve the inmate's due process rights in a civil matter. Instead, the court concluded that the inmate cannot be transferred if the Department of Corrections and Rehabilitation refuses, and left trial courts to fashion *other* remedies to preserve the inmate defendant's due process rights. Thus, it appears that the California Supreme Court believes there is no nonstatutory power for courts to order inmate transfers.[7]

### 2. Code of Civil Procedure Section 187 Is Not Authority for a Nonstatutory Transfer Order When There Is No Pending Prosecution

Second, while no case has specifically considered whether a court's *common law* power to ensure the administration of justice authorizes the court to order a nonstatutory inmate transfer, cases have considered the issue under Code of Civil Procedure section 187, the statutory analogue of the common law power. Code of Civil Procedure section 187 provides that "[w]hen jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

In *People v. Sequeira* (1981) 126 Cal.App.3d 1 [179 Cal.Rptr. 249], Division One of the First Appellate District considered whether Code of Civil Procedure section 187 gave a trial court authority to transfer an inmate from one county jail to another for the purposes of a physical lineup. (*Sequeira*, at p. 13.) The appellate court upheld the order, concluding that "the trial court's order transferring [the defendant] to its jurisdiction to participate in a lineup was a proper exercise of its authority under section 187 to 'carry into effect' a criminal proceeding against [the defendant]."[8] (*Sequeira*, at p. 14.) In

---

ordered to transport him to the L.A. Jail until such time as the court ordered him returned. We will not interpret a court order as a request, and believe it would work a great deal of mischief if we did so.

[7] See also *People v. Superior Court* (1957) 148 Cal.App.2d 731, 732 [307 P.2d 375], which stated that an order transferring an inmate was invalid, "since there is no showing whatever that it comes within the provisions of Penal Code, sections 2620 and 2621, nor were any proceedings taken thereunder."

[8] The appellate court also upheld the order under Penal Code section 1567, which provides for a transfer order "[w]hen it is necessary to have a person imprisoned in the state prison brought before any court . . . . " No party to the instant writ argues that the trial court's order was appropriate under Penal Code section 1567. While earlier cases found authority for transfer orders in Penal Code section 1567 (e.g., *People v. Groves* (1923) 63 Cal.App. 709, 713

*Goodwin v. Superior Court* (2001) 90 Cal.App.4th 215, 224 [108 Cal.Rptr.2d 553], Division Five of the Second Appellate District disagreed with *Sequeira*, explaining, "*Sequeira*'s partial reliance on section 187 of the Code of Civil Procedure is misplaced. Section 187 itself does not confer jurisdiction where such jurisdiction does not otherwise exist. As our Supreme court has stated, 'By its terms, . . . section 187 operates only where some other provision of law confers judicial authority *in the first instance*.' [Citations.] Before the institution of criminal proceedings by the filing of a complaint, there is no criminal case over which the court may exert its jurisdiction. Therefore, at that point, the power under Code of Civil Procedure section 187 to use 'all the means necessary to carry [such jurisdiction] into effect' does not exist. That a criminal proceeding may be instituted *after* a lineup is held does not confer jurisdiction to issue an order to attend the lineup *before* the criminal proceeding arises." We agree with *Goodwin*. When there is no criminal proceeding pending against the inmate, Code of Civil Procedure section 187 provides no basis for a transfer order. In this case, there is no criminal proceeding pending against J.T.; thus, the transfer order cannot be justified on this basis.

### 3. *Courts Possess Inherent Powers to Carry Out Their Judicial Functions, Not to Aid in Investigations*

■ Third, we turn to the common law power itself. California Constitution, article VI, section 1 provides, "The judicial power of this State is vested in the Supreme Court, courts of appeal, and superior courts, all of which are courts of record." As our Supreme Court has explained: " 'Our courts are set up by the Constitution without any special limitations; hence the courts have and should maintain vigorously all the inherent and implied powers necessary to properly and effectively function as a separate department in the scheme of our state government.' " (*People v. Engram* (2010) 50 Cal.4th 1131, 1146 [116 Cal.Rptr.3d 762, 240 P.3d 237].) "All courts have inherent powers which enable them to carry out their duties and ensure the orderly administration of justice. The inherent powers of courts are derived from article VI, section 1 of the California Constitution and are not dependent on statute. [Citations.] These powers entitle courts to ' ". . . adopt any suitable method of practice, both in ordinary actions and special proceedings, if the procedure is not specified by statute or by rules adopted by the Judicial Council." [Citation.]' [Citation.] Thus, a trial court has the inherent authority to create a new form of procedure in a particular case, where justice demands

---

[219 P. 1033]), it has since been held that "[t]his section only 'prescribes the manner of procuring [the prisoner's] presence . . . .' [Citation.] Other statutes describe the situations in which his attendance may be ordered." (*Wood v. Superior Court* (1974) 36 Cal.App.3d 811, 813 [112 Cal.Rptr. 157].)

it. [Citations.] ' "The . . . power arises from necessity where, in the absence of any previously established procedural rule, rights would be lost or the court would be unable to function." [Citation.]' [Citation.]" (*In re Amber S.* (1993) 15 Cal.App.4th 1260, 1264 [19 Cal.Rptr.2d 404].)

■ The City argues that ordering the transfer of J.T., in order to assist the City in its current criminal investigation, falls within the scope of the trial court's inherent power, as a "suitable method of practice" the court may adopt. We disagree. A court's inherent powers arise from the California Constitution, which vests the courts with the *judicial* powers of the state. The investigation of crimes, however, is an executive branch function. (*Gananian v. Wagstaffe* (2011) 199 Cal.App.4th 1532, 1542 [132 Cal.Rptr.3d 487].) Without statutory authority, a court has no inherent powers to assist in the investigation of crimes. The trial court's issuance of the inmate transfer order for investigative purposes does not, in any way, further the court's ability to perform its judicial function.[9] Thus, the court has no inherent authority to issue the transfer order in these circumstances.[10]

We conclude that the trial court lacked authority for its order.[11] We therefore will grant the petition for writ of madate.

---

[9] Our analysis is similar to that of the *Goodwin* court with respect to Code of Civil Procedure section 187. *Goodwin* held that Code of Civil Procedure section 187 provides no authority for a transfer order when the court otherwise lacks jurisdiction; we hold that a court's inherent power provides no authority for a transfer order when the order is sought for an investigative, as opposed to judicial, purpose. Under either analysis, the court issuing the transfer order does so without any judicial jurisdiction.

[10] Subsequent to the trial court's issuance of its order temporarily transferring J.T., the Legislature amended Penal Code section 2690, as an urgency matter, to provide that the Secretary of the Department of Corrections and Rehabilitation may authorize the temporary removal of any inmate from prison in order to "permit[] the inmate to participate in or assist with the gathering of evidence relating to crimes." (Stats. 2012, ch. 145, § 1.) The City argues that this amendment implies that orders to release inmates for investigative purposes "have now been expressly approved by the California Legislature as being a proper exercise of the judicial function." On the contrary, the Legislature granted authority for such orders to the Secretary of the Department of Corrections and Rehabilitation, not the courts. Moreover, the Secretary of the Department of Corrections and Rehabilitation is, by this statute, granted discretion to authorize the temporary removal of an inmate for investigative purposes; such authority necessarily includes the discretion on the part of the secretary to refuse a request for such removal. That appears to be precisely what occurred in this case, as the warden, acting on behalf of the Department of Corrections and Rehabilitation, denied the request for removal.

[11] The City argues, in the alternative, that it could have obtained a warrant for the arrest of J.T. under Penal Code section 817, and executed that warrant at the prison where J.T. is incarcerated. We express no opinion on the merits of this procedure, as it is not the procedure attempted by the City in this case. We do note, however, that Penal Code section 817 results in the issuance of a warrant requiring that the defendant *be brought before a magistrate*, not that the defendant be brought to county jail for investigative purposes.

## DISPOSITION

The petition for writ of mandate is granted. Let a writ of mandate issue directing the trial court to vacate its order temporarily transferring J.T. to the L.A. Jail, and to issue a new and different order denying the request for a transfer order.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied September 14, 2012, and the opinion was modified to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied November 20, 2012, S205587.