Filed 6/24/13  P. v. Diaz CA2/6
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B239571 |
| | (Super. Ct. No. F461988) |
| Plaintiff and Respondent, | (San Luis Obispo County) |
| v. | |
| JOHN SYLVESTER DIAZ, | |
| Defendant and Appellant. | |

John Sylvester Diaz appeals from the judgment entered after his no contest plea to driving with a blood-alcohol level of .08 percent or more.  (Veh. Code, § 23152, subd. (b).)  Appellant admitted three prior convictions of driving under the influence.  The three priors made the present crime a felony offense.  ( *Id.,* § 23550.)  Appellant was granted probation on condition that he serve 300 days in county jail.

Appellant pleaded no contest after the trial court had denied his motion to suppress evidence pursuant to Penal Code section 1538.5.[1]  Appellant contends that the trial court erred because the police made a warrantless entry into his residence without probable cause or exigent circumstances.  He also contends that the

[1] Unless otherwise stated, all further statutory references are to the Penal Code.

1

warrantless, nonconsensual drawing of blood from his person violated his Fourth Amendment rights.  We affirm.

*Evidence Presented at the Section 1538.5 Hearing*

In the afternoon on June 29, 2011, Officer Adrian Ayala was on patrol when he received a call from a police dispatcher about a vehicle collision.  The dispatcher said that the driver of the vehicle, who appeared to be intoxicated, had fled the scene on foot and entered a residence.  According to the dispatcher, "the suspect had been staggering and had to . . . h[o]ld on to some mailboxes as he was fleeing the scene."

The dispatcher relied upon a 911 call from Tim Strobridge.  Strobridge had not witnessed the collision.  He was inside his house when he heard "a very loud crash."  He "immediately ran out because [he] was afraid somebody got hurt and saw the car precariously on its side up against a barbwire fence."  Appellant was behind the wheel of the vehicle.  Strobridge told the dispatcher that the driver was "drunk."

About 10 minutes after the call from the dispatcher, Officer Ayala arrived at the scene.  He saw the vehicle in question, which had "crashed up against" and damaged a fence.  The vehicle was off the south roadway edge on the wrong side of the road.   No other vehicle had been involved in the collision.

Officer Ayala met Strobridge at the residence that the driver had entered.  Strobridge said that two sisters resided there and that he did not recognize the driver.  Strobridge also said that the driver "was bleeding . . . from the face and head and that his shirt was torn and bloody."   In addition, Strobridge said that the driver "was stumbling all over the place and . . . needed to use the mailbox [for support] just to stand and continue."  Strobridge assured Ayala that the driver was still inside the residence.

Through an open window in the front of the house, Ayala yelled for the driver to come out. There was no response, but he heard what "sounded like doors closing." Since the exterior doors were locked, Ayala decided that he "had to make forcible entry." His reasons for the forcible entry were threefold. First, Ayala was concerned that the driver needed medical attention for his injuries. Second, Ayala did not know whether the driver resided at the residence. Third, Ayala believed that he had probable cause to arrest the driver for driving under the influence. Ayala wanted to test the driver's blood-alcohol level before the alcohol dissipated. He also wanted to prevent the driver from drinking additional alcohol that would affect his blood-alcohol level. Ayala believed "that there wasn't time" to get a warrant.

Ayala made a call requesting back-up officers. They arrived about five minutes later. Ayala and the other officers forced entry through a back door. They "shimm[ied] the door open" with "a screwdriver-like device." In a back bedroom, Ayala saw appellant sleeping on the floor. Ayala awakened him and determined that he was "grossly intoxicated." Ayala arrested appellant for driving under the influence.[2] At the time of the arrest, appellant was the only occupant of the house.

*Trial Court's Ruling*

The trial court ruled that the entry into the house was justified by "exigent circumstances." The court concluded that Ayala "probably had probable cause" to arrest appellant when he entered the house.

_____

[2] The arrest was made pursuant to Vehicle Code section 40300.5, which provides in relevant part: "[A] peace officer may, without a warrant, arrest a person when the officer has reasonable cause to believe that the person had been driving while under the influence of an alcoholic beverage or any drug, or under the combined influence of an alcoholic beverage and any drug when any of the following exists: [¶] (a) The person is involved in a traffic accident."

*Standard of Review*

" 'The standard of appellate review of a trial court's ruling on a motion to suppress is well established.  We defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.  [Citations.]' [Citation.]" (*People v. Weaver* (2001) 26 Cal.4th 876, 924.)  "[W]e view the record in the light most favorable to the trial court's ruling . . . ."  (*People v. Jenkins* (2000) 22 Cal.4th 900, 969.)

*Probable Cause to Arrest Appellant*

Appellant contends that, prior to entering the residence, Officer Ayala did not have probable cause to arrest him for driving under the influence.  Appellant argues: "Without some evidence that [he] had been driving in a manner that clearly suggested his ability to drive was impaired by alcohol, Strobridge's observations after the accident raised the suspicion of intoxication, but did not rise to the level of probable cause."

" 'Probable cause exists when the facts known to the arresting officer would persuade someone of "reasonable caution" that the person to be arrested has committed a crime.  [Citation.]  "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts . . . ."  [Citation.]  It is incapable of precise definition.  [Citation.]  " 'The substance of all the definitions of probable cause is a reasonable ground for belief of guilt,' " and that belief must be "particularized with respect to the person to be . . . seized."  [Citation.]' [Citation.]" (*People v. Thompson* (2006) 38 Cal.4th 811, 818.)

The probable cause standard was met here.  Ayala  could reasonably rely on the information conveyed by Strobridge.  "[P]rivate citizens who are witnesses to . . . a criminal act, absent some circumstance that would cast doubt upon their

information, should be considered reliable." (*People v. Ramey* (1976) 16 Cal.3d 263, 269.) Strobridge said appellant was drunk and saw obvious symptoms of intoxication. Appellant was staggering and "stumbling all over the place." He "needed to use the mailbox [for support] just to stand and continue."

Ayala's observations at the scene of the collision provided further support for believing that appellant was intoxicated. Appellant had been involved in a solo vehicle collision." The vehicle was on its side off the south roadway edge on the wrong side of the road. Appellant had clearly lost control of the vehicle. The loss of control was consistent with intoxication.

Thus, the information conveyed by Strobridge, together with Ayala's observations at the scene of the collision, would cause a reasonable person to believe that the driver of the vehicle was under the influence.

*Exigent Circumstances*

Appellant contends that, even if Officer Ayala had probable cause to arrest him for driving under the influence, "there were no exigent circumstances justifying warrantless entry into the residence." This contention is forfeited. During oral argument in the trial court, appellant's counsel conceded that exigent circumstances justified the entry if Ayala had probable cause to arrest appellant: "[W]e're ready to submit . . . that when the police have reason to believe and probable cause to believe that they need to arrest a particular individual inside a particular house, the effervescent [*sic*] nature of blood alcohol evidence does require that they get in there and do it." Counsel's theory was that "there's no probable cause to believe that a drunk driver was hiding inside that house."

In any event, exigent circumstances justified the warrantless entry. "The imminent destruction of evidence is an exigent circumstance justifying a warrantless entry into a residence to effect an arrest. [Citation.]" (*People v. Thompson*, *supra*, 38 Cal.4th at p. 820.) In *Thompson* our Supreme Court upheld a

5

warrantless entry into a residence to arrest the defendant for driving under the influence because his "blood-alcohol level would have diminished while the police sought a warrant as the body metabolized the alcohol, and . . . defendant could have masked his blood-alcohol level while the police sought a warrant by ingesting more alcohol." (*Id*., at p. 825.)

The *Thompson* court noted that it was not establishing a rule "that the police may enter a home without warrant to effect an arrest of a DUI [driving under the influence] suspect in *every* case." (*People v. Thompson*, *supra*, 38 Cal.4th at p. 827.) The court stated that it was holding "merely that the police conduct here, taking into account all of the circumstances, was reasonable - with reasonableness measured as ' "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." ' [Citations.]" (*Ibid*.)

The police conduct in the instant case was similarly reasonable. "There was strong evidence that [appellant] had committed the dangerous act of DUI, a jailable offense." (*People v. Thompson*, *supra*, 38 Cal.4th at p. 827.) Officer Ayala "feared . . . the evidence of that crime was in imminent danger of destruction." (*Ibid*.) Ayala wanted to test the driver's blood-alcohol level before the alcohol dissipated. Ayala also wanted to prevent the driver from drinking additional alcohol that would mask his blood-alcohol level when he was driving. Ayala "went up to an open window that was in the front of the house and . . . began to yell into the house for [appellant] to come out." There was no response, but Ayala heard "noises coming from inside the house" that "sounded like doors closing." It was reasonable for Ayala to conclude that the driver was refusing to come outside and talk to the police. The entry into the residence through the locked back door did not cause any property damage. The door did not have a dead bolt. The police "shimm[ied] the door open" with "a screwdriver-like device."

6

In his written motion to suppress, appellant requested that the court take judicial notice of the contents of the preliminary hearing transcript. But the court made no ruling on the request. "[I]t was incumbent on counsel, if [he] wished to pursue the matter, to secure a ruling from the trial court. The failure to do so forfeits the claim." (*People v. Lewis* (2008) 43 Cal.4th 415, 482.)

Furthermore, as appellant concedes in his opening brief, this "issue was not raised below." Pursuant to *Lorenzana v. Superior Court* (1973) 9 Cal.3d 626, 640, appellant may not raise the issue for the first time on appeal. "To allow a reopening of the question on the basis of new legal theories to support or contest the admissibility of the evidence would defeat the purpose of Penal Code section 1538.5 and discourage parties from presenting all arguments relative to the question when the issue of the admissibility of evidence is initially raised. [Citations.]" (*Id*., at p. 640, fn. omitted.)

Appellant requests that we exercise our discretion to consider the issue because it involves a question of law based on undisputed facts. "But this is true of most suppression hearings: the issue usually turns on the inferences to be drawn from undisputed evidence. . . . [T]he *Lorenzana* rule is designed to promote resolution at the trial level not only of issues of fact but also issues of law." (*People v. Smith* (1983) 34 Cal.3d 251, 270, fn. omitted.)

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P.J.


PERREN, J.

7

Barry T. LaBarbera, Judge

Superior Court County of San Luis Obispo

_____

Lyn A. Woodward, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, , Supervising Deputy Attorney General, Mary Sanchez, Esther P. Kim, Deputy Attorneys General, for Plaintiff and Respondent.