Filed 1/21/25  P. v. Madrigal CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAIRO GUADALUPE MADRIGAL,<br><br>Defendant and Appellant. | F087995<br><br>(Super. Ct. No. F19903348)<br><br>**OPINION** |

-ooOoo-

**THE COURT**\*

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Jr., Judge.

Robert H. Derham, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Levy, Acting P. J., Franson, J. and Meehan, J.

Appointed counsel for defendant Jairo Guadalupe Madrigal has asked this court to conduct an independent review of the record under *People v. Wende* (1979) 25 Cal.3d 436. Finding no arguable error that would result in a disposition more favorable to Madrigal, we affirm the judgment.

## BACKGROUND

The facts, taken from the probation report, are as follows. "On May 17, 2019, at approximately 7:02 p.m., officers were dispatched to Church Avenue and Sarah Street regarding a traffic collision and shooting victim. Upon arrival, officers observed a silver Mazda, which was missing the front bumper, stopped on the eastbound lane of Church Avenue and Sarah Street. Inside the vehicle, officers observed the victim, later identified as David Martinez Corona (age 27), in the driver's seat with his head resting on the headrest. David's head was bleeding from a gunshot wound. He also had a gunshot wound to the back of his left shoulder. Emergency Medical Services (EMS) arrived on scene and pronounced David deceased at 7:08 p.m.

"During the search of the area, officers discovered two expended .40 caliber shell casings, one located on the eastbound lane on Church Avenue and the second located in a dirt field south of Taylor Avenue. David's vehicle was observed to have the front and rear driver's side window shattered, the driver's side rear view mirror broken, the front bumper missing, the front window shield cracked, and the passenger side rear tire flat. The bumper was located near a metal light pole.

"Officers contacted witness, Tim C., who informed them he was a friend of David. Tim stated he was sitting in his vehicle at the AM/PM, at approximately 6:50 p.m., when he observed David enter the AM/PM store. Tim noticed two males, later identified as … Madrigal and Daniel Ray Solorio, enter the store and begin to stare at David. When David left the store, got into his Mazda, and began to drive away, Madrigal and Solorio followed. They entered their vehicle (Chevy Silverado) and followed David in their vehicle. Tim stated when he began to drive his vehicle towards his motel he heard

2.

approximately three gunshots. He observed David to be shot inside the Mazda. Tim picked up David's cousin, Joseph E., who was nearby and returned to David's vehicle to help him.

"Officers also contacted Jennie C. who stated she was David's cousin. She informed officers that the Mazda belonged to her and she allowed David to borrow it to go to the store to buy her a soda. David had been gone for approximately five to [10] minutes when Tim arrived and told her David had been shot. Jennie's boyfriend, Joseph, went with Tim to check on David. Jennie stated she ran to check on David and observed him in the driver's seat, not responding. She informed officers she did not know if David had any issues with anyone, but he was an Eastside Bulldog gang member.

"During the investigation, officers obtained the surveillance video from the AM/PM store. The video showed David enter the store by himself. As he was waiting in line, Solorio and Madrigal entered the store and Madrigal noticed David standing in line. Madrigal continued to stare at David without any confrontation. It was noted David had a clearly visible large dog paw tattoo on his left hand. After paying for his items, David exited the store. Madrigal continued to watch him and the direction he was walking. Shortly after, Madrigal exited the store while Solorio remained inside, paying for his items. Solorio then exited the store and walked back to his truck to pump gas. Madrigal, who had been on the northside of the AM/PM store, walked back to the truck and talked with Solorio while looking in the direction of David's vehicle. After pumping gas, Solorio entered the driver's seat and Madrigal the passenger's seat. When David drove his vehicle from the parking lot, Solorio followed in his vehicle. Both vehicles were observed to be driving at a high rate of speed.

"Additional surveillance videos from the surrounding area showed Solorio driving at a high rate of speed until [his vehicle] was parallel with David's vehicle. Solorio drove a short distance past David, made a three-point turn, and drove away. David's vehicle

3.

then struck a light pole; his body was observed to hit the windshield upon contact with the pole. His vehicle slowly backed up and came to a stop in the middle of the roadway.

"Officers positively identified the vehicle which was confirmed as belonging to Solorio. It was noted his vehicle had three distinct stickers in the rear window which could be seen in the surveillance videos.

"On May 18, 2019, an autopsy was performed for David by Dr. Gopal. Dr. Gopal determined David was shot two times. One bullet penetrated the back of the skull and lodged in the bone near the right eye and another bullet struck him on the upper left back and lodged in the soft tissue of the neck. The two medium caliber distorted lead bullets were recovered. The cause of death was the perforation of the brain due to a gunshot wound to the head. The manner of death was determined to be a homicide.

"On May 21, 2019, at approximately 4:30 p.m., detectives located Solorio's vehicle parked on a residential street. Solorio was observed exiting a residence nearby and was taken into custody. Detectives observed Solorio's vehicle had glue residue on the rear window and the stickers seen in the surveillance videos were missing.

"Under *Miranda*,[1] Solorio admitted to being a Huron Norteño gang member since the age of 12. When shown photographs from the AM/PM surveillance video on May 17, 2019, initially Solorio denied it was him; however, when confronted with the positive identifications from Solorio's family, Solorio admitted it was him. He identified Madrigal, who went by the name 'Lil Bam Bam,' as the person he was with. Solorio stated he was in Lemoore when Madrigal called him and asked for a ride to Fresno.

"Solorio stated when they arrived in Fresno, Solorio needed gas and stopped at the AM/PM. Solorio stated he and Madrigal entered the store and bought gas and cigarettes. Madrigal had walked outside while Solorio paid for his items.

---

**1**      *Miranda v. Arizona* (1966) 384 U.S. 436.

"After, Solorio walked back to his vehicle and pumped gas[and then] began to drive away. Solorio stated [David] drove towards them, when Madrigal said, 'What's up with that n[***]a?' Madrigal pulled out a firearm, 'clocked it,' and told Solorio, 'Follow that n[***]a, go n[***]a, follow that n[***]a.' Solorio stated he followed David's vehicle because Madrigal held the firearm around his waist area and he was scared Madrigal was pointing the firearm at him. Madrigal continued to tell Solorio to follow David.

"Solorio denied he ever pulled up next to David's vehicle. Solorio stated he heard two gunshots and Madrigal told him to make a U-turn, so he did, and drove away. He stated, he was driving approximately 35 miles per hour, when Madrigal jumped out [o]f the vehicle without saying anything. Solorio stated David was wearing red and believed he was a Bulldog gang member. He stated they do not get along with Bulldogs and Madrigal was 'pissed off' David was a Bulldog. Solorio stated he did not know Madrigal had a firearm until he pulled it out at the AM/PM. He stated the Norteño[ gang] would kill him for talking because it was against their code to talk. Solorio initially denied having stickers on his vehicle, but eventually admitted he had stickers on the rear window. He stated he removed them because he knew he had been on camera. [¶] Solorio was subsequently booked into the Fresno County Jail.

"On May 22, 2019, a *Ramey*[2] warrant was issued for Madrigal. On May 29, 2019, at approximately 1:30 p.m., officers assigned to the Street Violence Bureau Tac Team conducted surveillance on a residence belonging to Madrigal's girlfriend. At approximately 3:30 p.m., Madrigal was observed walking into the residence. After several announcements by officers, Madrigal exited the residence and was taken into custody.

---

**2**     *People v. Ramey* (1976) 16 Cal.3d 263.

5.

"Under *Miranda*, Madrigal stated the last time he was in Fresno was a month prior and he had gone to the Cherry Auction. When asked about his whereabouts on May 17, 2019, Madrigal stated he had worked at Harris Ranch and visited his son after work. He denied the photographs from the surveillance video were him and stated he was not familiar with Fresno. Madrigal denied he knew Solorio and stated he never saw him before. Madrigal denied the nickname 'Lil Bam Bam' and stated officers have him labeled as a Huron Parkside Norteño member, but he had been out of trouble since 2016. When Madrigal was confronted with being accused of following David in Solorio's vehicle, Madrigal laughed and stated people had accused him before. He stated he wanted a lawyer and the interview was terminated. [¶] Madrigal was subsequently booked into the Fresno County Jail."

In 2021, a jury found Madrigal guilty of murder (Pen. Code, § 187, subd. (a)),[3] with two special circumstances—drive-by murder (§ 190.2, subd. (a)(21)), and gang-related murder (§ 190.2, subd.(a)(22)). The jury also found true an alleged gang enhancement (§ 186.22, subd. (b)(5)), and a firearm enhancement under two different subdivisions of section 12022.53. Madrigal was convicted under subdivision (d), which requires a finding of personal discharge of a firearm causing death or great bodily injury, and subdivision (e)(1), which requires a finding that (1) a principal to the crime discharged a firearm causing death or great bodily injury and (2) the person violated the gang statute, section 186.22.

The trial court sentenced Madrigal to an indeterminate term of life on the firearm enhancement and a consecutive term of life without the possibility of parole for special circumstance murder.

While Madrigal's appeal was pending, the Legislature amended section 186.22. Madrigal had been charged with an enhancement and special circumstance based on the

---

**3** All further statutory references are to the Penal Code.

previous version of that statute. The amended law became effective on January 1, 2022. (Stats. 2021, ch. 699, §§ 3, 5; Assembly Bill No. 333 (2021–2022 Reg. Sess.).) This court ruled that the amended statute applied retroactively to Madrigal, and found the gang enhancement and special circumstance gang-related murder were no longer valid. We vacated those findings and remanded the matter for retrial. (*People v. Madrigal* (Feb. 24, 2023, F082856) [nonpub. opn.].)

The People subsequently moved to dismiss the gang-related enhancements and special circumstance allegation (§§ 186.22, subd. (b), 12022.53, subd. (e)(1) & 190.2, subd. (a)(22)).

The trial court then resentenced Madrigal to the same term as before, but based the sentence solely on the non-gang charges. The court again imposed a term of life without the possibility of parole for first degree murder with a special circumstance—drive-by murder (§ 190.2, subd. (a)(21))—with a consecutive term of 25 years to life for the personal discharge of a firearm causing death (§ 12022.53, subd. (d)).

Madrigal filed a timely notice of appeal.

## DISCUSSION

Madrigal's counsel asks this court to conduct an independent review of the record to determine whether there are any arguable issues on appeal. (*People v. Wende*, *supra*, 25 Cal.3d 436.) Madrigal was advised by counsel and by this court of his right to file a supplemental brief within 30 days of the filing of the opening brief. We have not received any communication from him.

We have undertaken an examination of the record and conclude there is no arguable error that would result in a disposition more favorable to Madrigal.

## DISPOSITION

The judgment is affirmed.